**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| **PERDUE FOODS LLC,** | |
| *Plaintiff*, | |
| **v.** | **Civil Action No. 3:26-cv-584** |
| **JOHN SOULES FOODS, INC.** | |
| *Defendant.* | |

**MEMORANDUM IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION**

VENABLE LLP

Roger A. Colaizzi (VSB No. 32651)
600 Massachusetts Avenue, NW
Washington, D.C. 20001
Tel: (202) 344-4000
Fax: (202) 344-8300
rcolaizzi@venable.com

Kevin W. Weigand (VSB No. 81073)
Christian R. Schreiber (VSB No. 89544)
1850 Towers Crescent Plaza, Suite 400
Tysons, VA 22182
Tel: (703) 760-1600
Fax: (703) 821-8949
kwweigand@venable.com
crschreiber@venable.com

*Counsel for Plaintiff Perdue Foods LLC*

**Table of Contents**

Introduction ...................................................................................................................1

Factual Background ........................................................................................................1

    I.     Perdue and Soules market and sell competing food products. ...............................1

    II.    Perdue launches 6 7 Chicken Nuggets and uses the Perdue 6 7 Marks first. ..........................................................................................................2

    III.   Soules adopts the Challenged Branding for the same product. ...........................4

    IV.   The Challenged Branding is likely to cause confusion and has already caused marketplace harm. ..................................................................6

    V.    Soules has not agreed to cease its challenged use. ..............................................7

Legal Standard ...............................................................................................................8

Argument.........................................................................................................................8

    I.     Perdue is likely to succeed on the merits. ...........................................................8

        A.    Violation of 15 U.S.C. § 1125(a) .................................................................8

        B.    Common Law Trademark Infringement.................................................15

        C.    Common Law Unfair Competition............................................................16

    II.    Perdue has suffered, and will continue to suffer, irreparable harm. ....................16

    III.   The balance of the equities favors granting an injunction...................................18

    IV.   The public interest favors granting an injunction. ...............................................19

    V.    The Court should require no bond or only a nominal bond. ................................20

Conclusion....................................................................................................................20

i

**Introduction**

Plaintiff Perdue Foods LLC ("Perdue") launched and nationally promoted 6 7 Chicken Nuggets before Defendant John Soules Foods, Inc. ("Soules") announced a directly competing frozen chicken nugget product promoted as "67 Chicken Nuggets." In doing so, Soules adopted the same 6 7 product designation for the same product category and used highly similar breaded-numeral, cartoon-hands packaging and promotional presentation (the "Challenged Branding") after Perdue had already launched its product, filed trademark applications, and generated national attention.

Soules' Challenged Branding has already caused harm. A major national grocery retailer has already refused to authorize or carry Perdue's 6 7 Chicken Nuggets because the retailer would be carrying Soules' competing "67 Chicken Nuggets" product. Soules also has announced that its product will be sold nationwide beginning in July 2026. Without immediate relief, Perdue will lose time-sensitive shelf space, customers, market share, retailer goodwill, and control over its reputation in a limited-edition launch window that cannot be recreated after trial.

Perdue does not seek to bar Soules from selling chicken nuggets, nor does Perdue claim exclusive rights in the numbers 6 and 7 standing alone or for every purpose. Rather, Perdue seeks a narrow injunction prohibiting Soules from using the Challenged Branding for chicken nuggets, frozen poultry products, or closely related food products. That relief preserves the status quo, prevents imminent consumer confusion, and protects Perdue's goodwill while leaving Soules free to compete under a non-confusing name and packaging.

**Factual Background**

I.      **Perdue and Soules market and sell competing food products.**

Perdue is a leading food and agricultural company recognized nationally for quality,

1

service, and reliability. Perdue supplies major grocery chains, mass merchandisers, club stores, and wholesale distributors with Perdue-branded food products, most prominently chicken products, throughout the United States, including in Virginia and this District. Declaration of Cody Walter ("Walter Decl.") ¶¶ 6-8. Soules is a competitor in prepared chicken products. Based on Soules' public materials and Perdue's industry experience, Soules manufactures, markets, distributes, offers for sale, and sells prepared chicken products through the Soules Foods and Soules Kitchen names in many of the same retail channels and geographic markets as Perdue, including Virginia. *Id.* ¶¶ 9-10.

**II.    Perdue launches 6 7 Chicken Nuggets and uses the Perdue 6 7 Marks first.**

In April 2026, Perdue launched 6 7 Chicken Nuggets. Walter Decl. ¶ 11. Perdue owns trademark rights in the 6 7 / 6-7 designation and stylized 6 7 designs as used in connection with frozen chicken nuggets (the "Perdue 6 7 Marks"). *Id.* ¶ 12. Perdue also applied in April to register the Perdue 6 7 Marks with the U.S. Patent and Trademark Office under Serial Nos. 99796669, 99796671, and 99797059. *Id.* ¶¶ 12, 15.

Perdue has developed distinctive packaging trade dress for its 6 7 Chicken Nuggets. That packaging trade dress includes the overall combination and commercial impression of the prominent "6 7" product designation, illustrated breaded chicken-nugget numerals 6 and 7, cartoon hands holding or supporting the numerals, playful youth-oriented styling, and doodle-style background elements including stars and smiley faces. *Id.* ¶ 13. Taken as a whole, that packaging presentation is nonfunctional and serves to identify Perdue as the source, sponsor, or approver of the product. *Id.* Example images of Perdue's packaging and marks in advertising are shown below:





Perdue announced 6 7 Chicken Nuggets on April 16, 2026, and immediately began national promotion. Perdue began using the Perdue 6 7 Marks in interstate commerce no later than April 27, 2026, when Perdue fulfilled giveaway orders by shipping marked product across state lines to consumers. *Id.* ¶ 14. By May 1, 2026, the product was available at Walmart stores nationwide, including Walmart stores in Virginia. *Id.* ¶¶ 14, 16.

The Perdue 6 7 Marks are used prominently on product packaging and on Perdue's website, advertising, and promotional materials as the product name and as a distinctive stylized logo in

connection with the PERDUE® house mark. *Id.* ¶¶ 16-20. Since Perdue announced and launched the product, 6 7 Chicken Nuggets have been referenced nationally in a segment on *Late Night with Seth Meyers*, BuzzFeed Tasty, Dexerto, Men's Journal, PureWow, and other media outlets. *Id.* ¶ 21.

### III.    Soules adopts the Challenged Branding for the same product.

More than a month after Perdue launched and nationally promoted its 6 7 Chicken Nuggets, Soules announced and promoted a directly competing chicken-nugget product using the same 6 7 designation and a highly similar breaded-numeral design. Walter Decl. ¶¶ 22-24. Soules' product is promoted as "67 Chicken Nuggets," and the dominant commercial impression of Soules' designation is the same as Perdue's 6 7 designation. *Id.* ¶¶ 23, 26.

Soules' designation, logo, packaging, trade dress, advertising, website content, and promotional materials are referred to in the Complaint and supporting declaration as the "Challenged Branding." *Id.* ¶ 24. The Challenged Branding uses the same source-identifying elements of Perdue's presentation, including the 6 7 product designation, breaded chicken-nugget numerals 6 and 7, cartoon hands holding or supporting the numerals, playful youth-oriented styling, and doodle-style background elements including stars and smiley faces. *Id.* ¶ 24. Soules' use appears on the same type of product, frozen chicken nuggets, and is directed to the same ordinary grocery consumers and retail buyers through overlapping grocery and mass-retail channels. *Id.* ¶¶ 10, 24, 27, 29-30. Images from Soules' website advertising are shown below:

4





A side-by-side comparison of Perdue's product packaging with the Perdue 6 7 Marks and Soules' product packaging with the Challenged Branding is provided below:

5

 

*Id.* ¶ 25. Soules uses the Challenged Branding on its product packaging and in advertising, including on Soules' website and product page. *Id.* ¶¶ 27-29. Soules has announced that its "67 Chicken Nuggets" product will be sold in Kroger and ALDI stores nationwide beginning in July 2026, and Soules' product page directs consumers to find the product in Kroger or ALDI stores this summer. *Id.* ¶ 29.

**IV.    The Challenged Branding is likely to cause confusion and has already caused marketplace harm.**

Given the shared dominant 6 7 designation, the same product category, the similar breaded-numeral and cartoon-hands packaging presentation, and overlapping retail channels, Soules' use of the Challenged Branding is likely to cause consumers and retail buyers to believe mistakenly that Soules' product originates with, is affiliated with, or is sponsored, approved, or authorized by Perdue. Walter Decl. ¶ 30.

Perdue has already suffered concrete marketplace harm. A major national grocery retailer refused to authorize or carry Perdue's 6 7 Chicken Nuggets because the retailer would be carrying Soules' competing "67 Chicken Nuggets" product. *Id.* ¶¶ 31-32. The lost retail placement deprived Perdue of shelf space, sales opportunities, customers, market share, retailer goodwill, and the ability to maximize a time-sensitive limited-edition launch window. *Id.* ¶¶ 32-34.

6

Additionally, Perdue is aware of at least one example of actual consumer confusion. In connection with an Instagram post, originally by Dexerto and re-posted by another user, regarding Soules' release of its 67 Chicken Nuggets product, a user commented on the post: "i saw 67 nuggets at walmart 3 weeks ago."



*Id.* ¶¶ 37-38. This reflects consumer confusion because only Perdue's 6 7 Chicken Nuggets are sold at Walmart, not Soules' product, thus the consumer actually saw Perdue's product. *Id.*

**V.    Soules has not agreed to cease its challenged use.**

On June 9, 2026, Perdue's counsel sent a cease-and-desist letter to counsel for Soules demanding that Soules discontinue all use of the Challenged Branding, among other things. Walter Decl. ¶ 39 & Ex. 4. On June 17, 2026, Soules responded and stated it would not agree to cease its challenged use, and as of the date of the declaration, Soules has still not agreed to cease its challenged use. *Id.* ¶¶ 40-41. Soules' continued promotion and planned distribution despite notice supports the need for immediate injunctive relief.

## Legal Standard

To obtain a preliminary injunction, a plaintiff must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities favors the plaintiff; and (4) that an injunction is in the public interest. *See Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008); *Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.*, 700 F. App'x 251, 255 (4th Cir. 2017).

## Argument

### I.     Perdue is likely to succeed on the merits.

Perdue asserts claims for false designation of origin, trademark and trade dress infringement, and unfair competition under 15 U.S.C. § 1125(a), as well as Virginia common-law trademark infringement and unfair competition. Perdue is likely to succeed on those claims.

### A.     Violation of 15 U.S.C. § 1125(a)

"Congress' effort to eliminate confusion in the marketplace as to the identification of goods and services is embodied in the Lanham Act ...." *East West, LLC v. Rahman*, 896 F. Supp. 2d 488, 496 (E.D. Va. 2012). Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides:

> **(1)** Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> > **(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, …
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Section 43(a) also protects unregistered trademarks and trade dress. *See* 15 U.S.C. § 1125(a); *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 770-71 (1992); *East West*, 896 F.

8

Supp. 2d at 497. The test for false designation of origin under 15 U.S.C. § 1125(a) is "essentially the same as the test for trademark infringement." *Top Tobacco, L.P. v. Thobani*, No. 3:19-cv-275, 2019 WL 5085423, at *2 (E.D. Va. Oct. 10, 2019). A plaintiff alleging trademark infringement, false designation of origin, and unfair competition under 15 U.S.C. § 1125(a) must prove:

> (1) [T]hat it possesses a mark; (2) that the defendant used the mark; (3) that the defendant's use of the mark occurred "in commerce"; (4) that the defendant used the mark "in connection with the sale, offering for sale, distribution, or advertising" of goods or services; and (5) that the defendant used the mark in a manner likely to confuse consumers.

*People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 364 (4th Cir. 2001); *East West*, 896 F. Supp. 2d at 497 (stating that "[b]oth infringement and false designation of origin have five elements" and reciting the elements set forth in *People for the Ethical Treatment of Animals*); *see also Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 936 (4th Cir. 1995) (describing the elements of these claims as that plaintiff "has a valid, protectible trademark and that the defendant's use of a colorable imitation of the trademark is likely to cause confusion among consumers").

Trade dress infringement applies a similar test. *See Black & Decker (U.S.) Inc. v. Pro-Tech Power Inc.*, 26 F. Supp. 2d 834, 849 (E.D. Va. 1998) (explaining that a trade dress infringement claim under Section 43(a) of the Lanham Act "requires proof (1) that the plaintiff's product possesses a primarily nonfunctional trade dress; (2) that this trade dress is inherently distinctive or possesses secondary meaning; and (3) that the defendant's allegedly infringing product creates a likelihood of confusion in the marketplace").

> **1.      *Perdue owns protectable rights in the Perdue 6 7 Marks and 6 7 Chicken Nuggets packaging trade dress.***

"Common law determines who enjoys the exclusive right to use an unregistered trademark, the extent of such rights, and the proper geographical scope of any injunctive relief necessary to

9

protect against the infringement of such rights." *Emergency One, Inc. v. Am. Fire Eagle Engine Co.*, 332 F.3d 264, 267 (4th Cir. 2003). "At common law, trademark ownership is acquired by actual use of the mark in a given market." *Id.* "When more than one user claims the exclusive right to use an unregistered trademark, priority is determined by the first actual use of [the] mark in a genuine commercial transaction." *Id.* (alteration in original) (quotations omitted).

"[T]rademark law has developed a spectrum of the distinctiveness of marks. In declining order of distinctiveness, marks are referred to as (1) arbitrary or fanciful, (2) suggestive, (3) descriptive, or (4) generic. The more distinctive a mark, the more protection it receives." *OBX-Stock, Inc. v. Bicast, Inc.*, 558 F.3d 334, 340 (4th Cir. 2009) (citations omitted).

"Arbitrary, fanciful, and suggestive marks are deemed inherently distinctive and valid as service marks." *Zinner v. Olenych*, 108 F. Supp. 3d 369, 379 (E.D. Va. 2015). A mark that is arbitrary is "based on existing words used in ways unconnected with their common meaning, such as APPLE computer or SHELL gasoline." *Id.* "Similarly, fanciful marks are 'made-up words expressly coined to serve as trade or service names.'" *Id.* (citing *U.S. Search, LLC v. U.S. Search.com Inc.*, 300 F.3d 517, 523 (4th Cir. 2002)). "A suggestive mark 'connote[s], rather than describe[s], some quality, ingredient, or characteristic of the service." *Zinner*, 108 F. Supp. 3d at 379-80 (alteration in original) (citing *U.S. Search,* 300 F.3d at 523). "'Fanciful,' 'arbitrary,' and 'suggestive' marks are inherently distinctive, and thus receive the greatest protection against infringement." *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 464 (4th Cir. 1996).

Here, the Perdue 6 7 Marks are arbitrary marks that are inherently distinctive and protectable under trademark law. The designation "6 7" does not describe the ingredients, qualities, function, or characteristics of frozen chicken nuggets in the trademark sense. Rather, Perdue uses the Perdue 6 7 Marks prominently as a product name (6 7 Chicken Nuggets) and stylized logo

10

(illustrated breaded chicken-nugget numerals 6 and 7 with cartoon hands holding/supporting the numerals), on packaging, websites, and advertisements, to identify Perdue's product and Perdue as the source, sponsor, or approver of the product, not merely as decoration or an informational message. Walter Decl. ¶¶ 16-20. The use of "6 7" is unconnected to its common meaning, which has nothing to do with chicken nuggets, and the corresponding logo is a made-up, fanciful design. *See, e.g.*, *Sara Lee*, 81 F.3d at 465 (finding that the mark at issue, "L'eggs," was unquestionably suggestive as it represented a singular concept associated with another, entirely distinct concept); *Montblanc-Simplo GmbH v. Montblancpensale.org*, 297 F.R.D. 242, 247-48 (E.D. Va. 2013) (finding that "Montblanc," meaning "white horse," was an arbitrary mark when used in the context of branding luxury writing instruments); *Venetian Casino Resort, LLC v. VenetianGold.com*, 380 F. Supp. 2d 737, 742 (E.D. Va. 2005) (finding that "Venetian" was an arbitrary mark in the context of casino, hotel, retail shopping, website, entertainment and spa services); *Polo Fashions, Inc. v. Gordon Grp.*, 627 F. Supp. 878, 887 (M.D.N.C. 1985) (finding that a polo player logo constituted fanciful, protectable mark).

Perdue's packaging trade dress is also protectable. Product packaging trade dress can be inherently distinctive when its overall commercial impression identifies source, and trade dress is protectable when it is distinctive and nonfunctional. *Two Pesos*, 505 U.S. at 773-76; *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 212-15 (2000). A feature is functional if it is essential to the use or purpose of the article or affects its cost or quality. *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 32-33 (2001). Perdue's packaging trade dress includes a particular overall combination of source-identifying elements: the prominent 6 7 product designation, illustrated breaded chicken-nugget numerals 6 and 7, cartoon hands holding or supporting the numerals, playful youth-oriented styling, and doodle-style background elements.

11

Walter Decl. ¶ 13. That combination, taken as a whole, is nonfunctional because it is not essential to the use or purpose of chicken nuggets, is unique or unusual for chicken nuggets, does not affect cost or quality, and serves to identify Perdue's product and Perdue as the source, sponsor, or approver. *Id.*; *see also Ashley Furniture Indus., Inc. v. SanGiacomo N.A. Ltd.*, 187 F.3d 363, 371, 373 (4th Cir. 1999) ("[T]o qualify as inherently distinctive a design must be 'unique or unusual' in the 'particular field' at issue…. [T]rade dress is the 'total image' of a product, and thus the relevant inquiry is … whether the alleged trade dress as a whole is inherently distinctive.").

Perdue is not seeking to monopolize a viral phrase or the numbers 6 and 7 standing alone. Perdue merely seeks to protect its source-identifying use of the Perdue 6 7 Marks and its packaging trade dress for chicken nuggets and closely related frozen poultry products, and to prevent Soules from using confusingly similar branding for directly competing goods.

### 2.    *Soules is using the Challenged Branding in a manner that is confusingly similar to the Perdue 6 7 Marks and packaging trade dress.*

Soules is using a designation, logo, packaging presentation, and promotional presentation that are confusingly similar to the Perdue 6 7 Marks and Perdue's packaging trade dress. Soules' product is promoted as "67 Chicken Nuggets," and the dominant commercial impression of Soules' designation is the same as Perdue's 6 7 designation. Walter Decl. ¶¶ 23-26. The Challenged Branding also uses the same core source-identifying elements of Perdue's presentation: the 6 7 product designation, breaded chicken-nugget numerals 6 and 7, cartoon hands holding or supporting the numerals, playful youth-oriented styling, and doodle-style background elements including stars and smiley faces. *Id.* ¶¶ 24-28; *see also Lone Star*, 43 F.3d at 936 ("[I]n evaluating the similarity of two marks, this Court has reasoned that the marks need only be sufficiently similar in appearance, with greater weight given to the dominant or salient portions of the marks.").

12

Perdue used the Perdue 6 7 Marks in interstate commerce at least as early as April 27, 2026, when Perdue fulfilled giveaway orders by shipping marked product across state lines to consumers; by May 1, 2026, the product was available at Walmart stores nationwide, including Walmart stores in Virginia. Walter Decl. ¶¶ 14, 16. Perdue's use of the Perdue 6 7 Marks and packaging trade dress predates Soules' adoption and promotion of the Challenged Branding, which began more than a month after Perdue's launch and national promotion. *Id.* ¶¶ 21-24.

### 3. *Soules is using the Challenged Branding in commerce in connection with the sale, offering for sale, distribution, and advertising of its 6 7 chicken nuggets products.*

There can be no dispute that Soules has used the Challenged Branding in commerce in connection with the sale, offering for sale, distribution, or advertising of its 6 7 chicken nuggets products. Soules uses the Challenged Branding on product packaging and in national advertising and promotion, including on Soules' website and product page. Walter Decl. ¶¶ 27-28. Soules has also announced nationwide distribution of the "67 Chicken Nuggets" product through Kroger and ALDI beginning in July 2026. *Id.* ¶ 29. Those uses are in interstate commerce and in connection with the offering for sale, planned distribution, promotion, and advertising of Soules' product. *See* 15 U.S.C. § 1125(a); *see also* 15 U.S.C. § 1127 (defining "use in commerce" for goods to include when the mark is "placed in any manner on the goods or their containers or the displays associated therewith" and "the goods are sold or transported in commerce").

### 4. *Soules' use of the Challenged Branding is likely to confuse consumers.*

The Fourth Circuit considers nine nonexclusive factors to determine whether there is a likelihood of confusion: (1) the distinctiveness of the plaintiff's mark; (2) the similarity of the two marks; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the parties; (5) the similarity of the advertising used by the parties; (6) the defendant's intent in adopting the same or similar mark; (7) actual confusion; (8) the quality of the

13

defendant's product; and (9) the sophistication of the consuming public. *See Sara Lee*, 81 F.3d at 463-64. Certain factors may not be relevant to every situation, and some factors may be more important than others to a given case. *Id.* at 463. Evidence of actual confusion, though, is "entitled to substantial weight." *Lone Star*, 43 F.3d at 937.

The relevant factors strongly favor Perdue.

First, the Perdue 6 7 Marks and Perdue's packaging trade dress are distinctive for frozen chicken nuggets. The 6 7 designation does not describe chicken nuggets, and the stylized breaded-numeral/cartoon-hands design is an unusual source-identifying presentation in this category. Walter Decl. ¶¶ 12-20. Perdue's national launch, Walmart availability, digital promotion, and media attention further strengthen the marks as used in the marketplace. *Id.* ¶¶ 14-21.

Second, the parties' marks and commercial impressions are highly similar. Perdue uses "6 7" and "6-7" for its 6 7 Chicken Nuggets; Soules uses "67 Chicken Nuggets." *Id.* ¶¶ 23-26. Both use the same dominant 6 7 designation for the same product. Soules also uses breaded chicken-nugget numerals 6 and 7, cartoon hands holding or supporting the numerals, youth-oriented styling, and doodle-style background elements in the Challenged Branding. *Id.* ¶¶ 24-28.

Third, the goods are identical: both are frozen chicken nugget products. *Id.* ¶¶ 22-29.

Fourth and fifth, the parties use overlapping grocery, mass-retail, packaging, website, and consumer-facing advertising channels. *Id.* ¶¶ 7-10, 16-21, 27-29.

Sixth, Soules' intent supports likely confusion. More than a month after Perdue's launch and national promotion, Soules adopted not only the same unusual 6 7 product designation for the same product, but the same core visual concept of breaded nugget-shaped numerals held by cartoon hands. *Id.* ¶¶ 22-24, 42. Soules then continued to promote and prepare to distribute its product after receiving Perdue's June 9, 2026 cease-and-desist letter. *Id*. ¶¶ 39-41.

14

Seventh, there is concrete marketplace evidence of confusion. An Instagram user, commenting on a post about Soules' 6 7 Chicken Nuggets, stated that he/she saw the product at Walmart, but the person would have actually seen Perdue's 6 7 Chicken Nuggets. *Id.* ¶¶ 37-38. Additionally, a major national grocery retailer refused to authorize or carry Perdue's 6 7 Chicken Nuggets because it would be carrying Soules' competing "67 Chicken Nuggets" product. *Id.* ¶ 32. In Perdue's experience, retailers do not want to shelve a competing, identical product. *Id.* ¶ 34. Evidence of actual confusion is entitled to substantial weight. *Lone Star*, 43 F.3d at 937.

Eighth, the quality factor is at least neutral.

Ninth, the relevant purchasers are ordinary grocery consumers, including parents and families making low-cost freezer-aisle purchasing decisions, not highly sophisticated purchasers exercising extended care. This factor also supports likely confusion.

## B.    Common Law Trademark Infringement

The tests for trademark infringement under Virginia common law are the same as under the Lanham Act. *See East West*, 896 F. Supp. 2d at 497 ("Because the test for trademark infringement under the Lanham Act is essentially the same as the common law trademark infringement and unfair competition claim under Virginia law, which likewise focuses on the likelihood of confusion among consumers, they [*sic*] claim need not be analyzed separately.").

At common law, the mark-holder has the exclusive right to use the mark in the areas where the mark has been used and the holder has carried on business, and the area of probable expansion. *See Emergency One*, 332 F.3d at 268. Perdue has sold its 6 7 Chicken Nuggets through Walmart stores nationwide, including Walmart stores in Virginia, and has marketed and sought expanded retail placement for that product with major national retailers, including retailers with stores in Virginia. Walter Decl. ¶¶ 8, 16. Perdue also advertises its 6 7 Chicken Nuggets on Perdue's

15

website, and the product has been referenced nationally in media outlets. *Id.* ¶¶ 19-21. Accordingly, Perdue is likely to succeed on its Virginia common-law trademark infringement claim for the same reasons it is likely to succeed under the Lanham Act.

## C.    Common Law Unfair Competition

The analyses for claims of unfair competition under Virginia common law are the same as under the Lanham Act. *See Lone Star*, 43 F.3d at 930 n.10 ("The test for trademark infringement and unfair competition under the Lanham Act is essentially the same as that for common law unfair competition under Virginia law because both address the likelihood of confusion as to the source of the goods or services involved."). Therefore, for the same reasons as described above, Perdue is likely to succeed on the merits of its common law unfair competition claim.

## II.    Perdue has suffered, and will continue to suffer, irreparable harm.

Upon a finding that Perdue is likely to succeed on its Section 43(a) claim, Perdue is entitled to a rebuttable presumption of irreparable harm under 15 U.S.C. § 1116(a). *Diamond Direct USA, Inc. v. BFJ Holdings, Inc.*, 895 F. Supp. 2d 752, 761 (E.D. Va. 2012) ("In Lanham Act cases involving trademark infringement, a presumption of irreparable injury is generally applied once the plaintiff has demonstrated a likelihood of confusion, the key element in an infringement case."). "The Fourth Circuit has recognized that 'irreparable injury regularly follows from trademark infringement.'" *Toolchex, Inc. v. Trainor*, 634 F. Supp. 2d 586, 591 (2008) (quoting *Lone Star*, 43 F.3d at 939); *see also Top Tobacco,* 2019 WL 5085423, at *3 ("Irreparable injury 'regularly follows' trademark infringement …."); *Juul Labs, Inc. v. Unincorporated Ass'ns Identified in Schedule A*, Case No. 1:19-cv-1126, 2019 WL 4394743, at *1 (E.D. Va. Sept. 13, 2019) ("In a trademark case in which the likelihood of success is clearly established, irreparable harm follows as a matter of course.").

16

This Court has previously held in granting a motion for preliminary injunction:

> A defendant's unauthorized use of a plaintiff's trademarks gives rise to irreparable injury as it causes a plaintiff to lose control of its business reputation, there is a substantial likelihood of confusion to the purchasing public, there may be no monetary recovery available, and there is an inherent injury to the goodwill and reputation of the plaintiff.

*Allegra Network LLC v. Reeder*, Civil Action No. 1:09-cv-912, 2009 WL 3734288, at *3 (E.D. Va. Nov. 4, 2009) (granting preliminary injunction as to trademark infringement and unfair competition claims); *accord Top Tobacco*, 2019 WL 5085423, at *3 ("[M]onetary damages do not adequately compensate the plaintiffs for the harm the infringement causes to the plaintiffs' reputation …."); *JK Moving & Storage, Inc. v. J & K Moving LLC*, Civil Action No. 1:17cv0849, 2017 WL 4800737, at *5 (E.D. Va. Oct. 4, 2017) ("JK Moving is suffering irreparable harm to the value and goodwill associated with its marks. The evidence of actual confusion demonstrates that JK Moving is susceptible to continued reputational harm … if defendant is allowed to continue its infringement."), *report and recommendation adopted*, 2017 WL 4799804 (E.D. Va. Oct. 23, 2017).

The record also independently establishes irreparable harm.

First, Perdue has already lost a concrete retail opportunity. A major national grocery retailer, which carries other Perdue products, refused to carry Perdue's 6 7 Chicken Nuggets because the retailer would be carrying Soules' 67 Chicken Nuggets product. Walter Decl. ¶ 32. Thus, even though Perdue was first to market with its 6 7 Chicken Nuggets and the Perdue 6 7 Marks, Soules' competing, confusingly similar product is preventing Perdue from obtaining retail placement in stores that already sell other Perdue products. *Id.* ¶¶ 32-35. This lost retail placement has deprived Perdue of shelf space, sales opportunities, customers, market share, retailer goodwill, and the ability to maximize a time-sensitive limited-edition launch window. *Id.* ¶¶ 31-34. Courts

17

recognize that loss of customers, market share, and goodwill can constitute irreparable harm. *See Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.*, 193 F. Supp. 3d 556, 574 (E.D. Va. 2016), *aff'd,* 700 F. App'x 251 (4th Cir. 2017).

Second, confusion deprives Perdue of control over its goodwill and reputation. Perdue has no ability to control Soules' product, packaging, marketing, supply, quality, retailer execution, or consumer experience, yet the Challenged Branding is likely to cause consumers and retail buyers to associate Soules' 67 Chicken Nuggets product with Perdue. Walter Decl. ¶¶ 30, 35-36. This Court has recognized that unauthorized use of another's marks can cause irreparable injury by causing the mark owner to lose control of its business reputation and goodwill. S*ee Allegra Network*, 2009 WL 3734288, at *3; *JK Moving & Storage*, 2017 WL 4800737, at *5, *report and recommendation adopted*, 2017 WL 4799804 (E.D. Va. Oct. 23, 2017).

Third, the harm is imminent. Soules has announced nationwide Kroger and ALDI distribution beginning in July 2026. Walter Decl. ¶ 29. Once the product reaches shelves, Perdue will face confusion at the point of sale, lost shelf space, lost retailer relationships, and reputational harm during a limited launch period that cannot be restored by a damages award after trial. Moreover, not only does Perdue lose these business opportunities, customers, and market share, but Perdue is at imminent risk of losing them to Soules, a direct competitor. *Id.* ¶¶ 33-35. Courts consistently hold that this constitutes irreparable harm. *See, e.g.*, *Salomon & Ludwin, LLC v. Winters*, 150 F.4th 268, 278 n.7 (4th Cir. 2025); *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 216-17 (4th Cir. 2019).

## III.    The balance of the equities favors granting an injunction.

The balance of equities further favors granting an injunction. As described above, Soules' use of the Challenged Branding has and will create confusion that is likely to continue, and which

18

irreparably harms Perdue. On the other hand, ceasing the illegal use of the Challenged Branding does not constitute a hardship to Soules. *See Top Tobacco*, 2019 WL 5085423, at *3 ("Ceasing illegal activity does not constitute a hardship for the defendants …."); *Toolchex*, 634 F. Supp. 2d at 593 ("[A]ny harm that a party suffers as a result of being required to stop willfully infringing on another party's trademark carries 'little' weight in evaluating the balance of the hardships."); *cf. Juul Labs*, 2019 WL 4394743, at *1 ("Defendants are unlikely to suffer any cognizable harm from the TRO as they would merely be prevented from profiting from past infringement ….").

The requested injunction is also narrowly tailored. It does not prevent Soules from selling chicken nuggets or other food products. It prevents only the confusing use of 6 7 / 6-7 / 67 and confusingly similar breaded-numeral/cartoon-hands designs, packaging, labels, webpages, advertisements, social-media content, point-of-sale materials, and promotional materials in connection with chicken nuggets, frozen poultry products, or closely related food products.

The hardship to Perdue absent relief is substantial, including lost shelf space, lost retailer opportunities, lost market share, time-sensitive launch harm, and loss of control over goodwill. On the other hand, the hardship to Soules is limited to stopping use of confusing branding and shifting to non-confusing packaging and promotional materials.

## IV.    The public interest favors granting an injunction.

The final factor, the public interest, also favors granting an injunction. "[T]he public's interest underlying the prohibition of trademark infringement is to prevent consumer confusion and deception." *Juul Labs*, 2019 WL 4394743, at *2 (granting TRO); *see also Bowe Bell & Howell Co. v. Harris*, 145 F. App'x 401, 404 (4th Cir. 2005) (affirming preliminary injunction where district court found that "the public has an interest in preventing the misleading and deceptive use of trademarks"). "Preventing consumers from being confused serves the public interest." *Toolchex*,

19

634 F. Supp. 2d at 594; *see also Lone Star*, 43 F.3d at 939 ("[A]n injunction in this case would serve the public interest by preventing future consumers from being misled.") (affirming permanent injunction for plaintiff Lone Star); *Juul Labs*, 2019 WL 4394743, at *2 ("Trademark infringement deceives consumers, and there is a 'public interest in making the misconduct unprofitable.'" (citing *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 175 (4th Cir. 2006))).

A narrow injunction will help consumers and retail buyers distinguish Perdue's product from Soules' product while leaving Soules free to compete under a non-confusing designation and packaging presentation.

**V.      The Court should require no bond or only a nominal bond.**

Rule 65(c) requires the Court to address security in an amount the Court considers proper. Fed. R. Civ. P. 65(c); *Pashby v. Delia*, 709 F.3d 307, 331-32 (4th Cir. 2013). Perdue respectfully requests that the Court require no bond or only a nominal bond because the requested injunction would merely require Soules to refrain from using infringing, confusing branding and packaging while still allowing Soules to sell chicken nuggets. Alternatively, Perdue will post such bond as the Court deems appropriate.

**Conclusion**

For the foregoing reasons, the Court should grant Perdue's motion for preliminary injunction and enter the proposed order attached to Perdue's motion.

20

Dated: June 23, 2026

Respectfully submitted,

VENABLE LLP

/s/ Roger A. Colaizzi
Roger A. Colaizzi (VSB No. 32651)
600 Massachusetts Avenue, NW
Washington, D.C. 20001
Tel: (202) 344-4000
Fax: (202) 344-8300
rcolaizzi@venable.com

Kevin W. Weigand (VSB No. 81073)
Christian R. Schreiber (VSB No. 89544)
1850 Towers Crescent Plaza, Suite 400
Tysons, VA 22182
Tel: (703) 760-1600
Fax: (703) 821-8949
kwweigand@venable.com
crschreiber@venable.com

*Counsel for Plaintiff Perdue Foods LLC*